UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL AMBRIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COCA COLA COMPANY,<br><br>    Defendant. | Case No. 13-cv-03539-JST<br><br>**ORDER TRANSFERRING ACTION TO CENTRAL DISTRICT OF CALIFORNIA**<br><br>Re: ECF No. 22 |

In this proposed California class action alleging California Labor Code violations against Defendant The Coca-Cola Company ("Coca-Cola") moves to dismiss, or alternatively, to transfer this action to the Central District of California on the basis of improper venue. ECF No. 22. Plaintiff Daniel Ambriz resides and worked for Coca-Cola in the Central District of California, but filed this proposed class action in the Northern District of California. Ambriz's central contentions in opposing the motion are (1) that venue is proper in this district because jurisdiction over Coca-Cola exists here and (2) that the Court should consider contacts between absent members of the putative class in determining venue. As set forth below, the Court rejects these contentions and concludes that venue is improper in this district and, even if venue were proper, the case should be transferred to the Central District of California in the interests of justice and for the convenience of the parties and witnesses.

**I.     BACKGROUND**

Ambriz filed this proposed class action on July 31, 2013, against Coca-Cola for violations of the California Labor Code and related statutory claims. Ambriz alleges he was employed by Coca-Cola as a field service technician from June 1998 to June 2013. He asserts seven claims against Coca-Cola on his own behalf and on behalf of thirteen subclasses of Coca-Cola's

California employees: (1) violations of California Labor Code sections 204, 223, 226.7, 512, and 1198 for failure to provide meal periods; (2) violations of California Labor Code sections 204, 223, 226.7, and 1198 for failure to provide rest periods; (3) violations of California Labor Code sections 223, 510, 1194, 1197, and 1198 for failure to pay hourly and overtime wages; (4) violation of California Labor Code section 226 for failure to provide accurate written wage statements; (5) violation of Labor Code sections 201–203 for late payment of final wages under California; (6) violation of California's Unfair Competition Law; and (7) violations of California's Private Attorney General Act.  First Am. Compl. ("FAC"), ECF No. 12.

Coca-Cola moved to dismiss the operative First Amended Complaint for failure to state a claim on September 18, 2013.  ECF No. 13.  The Court denied that motion in its entirety on November 5, 2013.  ECF No. 27.  Neither the original Complaint nor the First Amended Complaint state either where Ambriz resides or the location of his employment with Coca-Cola.

According to Coca-Cola, on October 21, 2013, while Coca-Cola's first motion to dismiss was under submission, the parties held a Rule 26(f) conference during which Ambriz's counsel requested that Coca-Cola stipulate to proper venue in the parties' joint case management statement.  Sims Decl., ECF No. 22-5 ¶ 2.  As part of this request, Ambriz's counsel "revealed for the first time that Plaintiff had worked 'in the Los Angeles area.'"  Id.  Ambriz does not contest that the first time he informed Coca-Cola that he worked in Southern California was at the Rule 26(f) conference.  The instant motion to dismiss was filed seven days later.  In its motion, Coca-Cola states that Ambriz was employed as a Customer Service Technician in Irvine, California, which is located in the Central District of California.  Mot. at 2;[1] Luquin-Cooper Decl., ECF No. 22-4 ¶ 3.  According to Coca-Cola's personnel records, Ambriz resides in Inglewood, California.  Luquin-Cooper Decl. ¶ 4.

**II.    LEGAL STANDARD**

The burden of establishing proper venue lies with Ambriz.  Piedmont Label Co. v. Sun

---

[1] Coca-Cola's motion is paginated incorrectly, as it lists the second page as page "1," and does not list a page number for the first page.  The Court will utilize the page numbers contained in the document for the convenience of the parties.

Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). All reasonable inferences and factual conflicts must be resolved in his favor. See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Even where venue is proper, the court may transfer any civil action to another jurisdiction where it may have been brought "for the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). In a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court may consider facts outside the pleadings, and the pleadings need not be accepted as true. See Murphy v. Schnieder National, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004).

### III. ANALYSIS

#### A. Motion to Transfer Pursuant to 28 U.S.C. § 1406(a)

Coca-Cola first moves to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that Ambriz has not established that any defendant resides in this district, 28 U.S.C. § 1391(b)(1), or that "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of California, 28 U.S.C. § 1391(b)(2).

Ambriz makes three arguments in opposition. First, Ambriz argues that Coca-Cola waived its opportunity to file a second motion to dismiss because it knew or should have known, prior to filing its first motion, where Ambriz worked. Second, Ambriz argues that venue is proper because Coca-Cola "has continuous and systematic contacts that would be sufficient to subject it to personal jurisdiction" here. Third, Ambriz contends that venue is proper because members of the proposed class reside and work for Coca-Cola in this district, even though Ambriz does not.

##### 1. Waiver

Pursuant to Federal Rule of Civil Procedure Rule 12(g)(2), a party that makes a Rule 12 motion to dismiss "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion," subject to the limitations set forth in Rule 12(h). The defense of improper venue is one of the defenses subject to the waiver

rule.

Ambriz argues that the defense of improper venue was "available" to Coca-Cola at the time of its first motion to dismiss because it knew or should have known that Ambriz worked and resides in the Central District of California. Ambriz notes that Coca-Cola has now submitted the declaration of a human resources manager verifying Ambriz's residence and work location. Therefore, Ambriz argues, Coca-Cola could have ascertained that information earlier, and so waived the defense of improper venue in its first motion to dismiss by failing to include it. The question is whether the burden fell on Coca-Cola to determine whether Ambriz worked or resided in this district in the forty-nine days between the filing of the original complaint and the filing of Coca-Cola's first motion to dismiss, even though Ambriz omitted any mention of this information in his complaint.

Ambriz cites no authority that would support the imposition of such a burden, and the Court has found none. Although Coca-Cola certainly could have ascertained through greater diligence where Ambriz worked and resided, it is also true that Ambriz could have easily stated in either the Complaint or the First Amended Complaint where he lives and worked. His omissions about these central venue facts, rather than any lack of diligence on the part of Coca-Cola, were the genesis of Coca-Cola's need to file successive motions to dismiss. The Court is unwilling to find waiver where both the original and amended complaints failed to put Defendant on notice of Ambriz's true residence and work history. See Glater v. Eli Lilly & Co., 712 F.2d 735, 738 (1st Cir. 1983) ("[T]he defense [of lack of personal jurisdiction] was not originally available to [Defendant] because [Plaintiff's] complaint did not put it on notice that her New Hampshire domicile was at least questionable. It could not waive a defense involving facts of which it was not, and could not have been expected to have been, aware.").

Having no authority for his central proposition, Ambriz instead relies on authority frowning upon the filing of successive motions to dismiss for the "sole purpose of delay." See Kilopass Tech., Inc. v. Sidense Corp., No. 10-cv-2066-SI, 2010 WL 5141843, at *3 (N.D. Cal. Dec. 13, 2010) (quotation omitted). But Ambriz has made no showing that Coca-Cola's second motion to dismiss was filed for the purpose of delay. Instead, it appears that Coca-Cola acted

4

immediately upon the revelation that Ambriz resides in the Central District of California.

Nor can the Court find that the motion *caused* any undue delay. No trial date has been set. The deadline for Ambriz to file his motion for class certification is June 13, 2014. Transfer of this action to the Central District of California at this time will not necessarily prevent Ambriz from meeting that deadline or otherwise following the existing class certification schedule.

In short, there is no basis for finding that Coca-Cola waived its right to bring this motion. The Court now turns to the merits.

## 2.     Venue and Personal Jurisdiction

Pursuant to the general venue statute, a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3). For purposes of the venue statute, corporate defendants reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). However, in states with multiple judicial districts, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."[2]  28 U.S.C. § 1391(d).

In the absence of a traditional basis for personal jurisdiction, a court has personal jurisdiction over a foreign defendant if the defendant has "certain minimum contacts" with the forum such that the court's power to bind the defendant would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (quotation

---

[2] Coca-Cola does not dispute that this Court does, in fact, have personal jurisdiction over it by virtue of California's long-arm statute. However, in analyzing venue, the Court is required to treat the Northern District of California as a separate state.

5

omitted).  Personal jurisdiction based on the minimum contacts analysis may either be "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).

### a. General Personal Jurisdiction

Ambriz asserts that venue is proper in this district because Coca-Cola "resides" here, and Section 1391(b)(1) provides that venue is proper in "a district in which any defendant resides." For purposes of section 1391, "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).  "Thus, '[f]or purposes of the general venue statute, corporate defendants reside where they are subject to personal jurisdiction,'" Peterson v. Nat'l Sec. Technologies, LLC, No. 12-cv-5025-TOR, 2012 WL 3264952, at *2 (E.D. Wash. Aug. 9, 2012) (quoting Caremark Theraputic Services v. Leavitt, 405 F.Supp.2d 454, 464 (S.D.N.Y. 2005), subject to the qualification that for venue purposes each district is treated as though it were a separate state.

A court may assert general personal jurisdiction over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 131 S. Ct. at 2851.  The standard for establishing general jurisdiction is "fairly high." Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986).  "The contacts with the forum state must be of a sort that approximate physical presence." Gator.Com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1076 (9th Cir. 2003) on reh'g en banc, 398 F.3d 1125 (9th Cir. 2005). The Ninth Circuit "regularly [has] declined to find general jurisdiction even where the contacts were quite extensive." Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc., 1 F.3d 848, 851 (9th Cir. 1993).

Ambriz asserts Coca-Cola has such contacts with the Northern District of California, and argues that "Defendant has not provided any declarations to the contrary to show that there are no contacts in the Northern District that would make venue improper." ECF No. 30 at 9.  It is Ambriz, however, who must carry the burden of establishing that venue is proper. Piedmont Label, 598 F.2d at 496.  To that end, Ambriz points to the declaration of Maria Luquin-Cooper, a

6

human resources manager for BCI Coca-Cola Bottling Company of Los Angeles' West Region. Luquin-Cooper Decl. ¶ 1. Ms. Luquin-Cooper states in her declaration that her employer has a "Northern California Market Unit" with "entirely different leadership than does the "Southern California Market Unit." Id. ¶ 3.

Ambriz's argument in favor of jurisdiction rests entirely on this slender reed, which cannot support the weight. The Luquin-Cooper declaration contains *no* information regarding the number of employees, if any, located in the Northern District; the number of customers located in the district; the physical facilities or other resources Coca-Cola maintains in the district; or any other information regarding Coca-Cola's contacts with the district. This evidence is too slight to permit the Court to reach any conclusions regarding the fundamental analysis courts must undertake in evaluating alleged "continuous and systematic contacts," such as whether Coca-Cola is "fairly regarded as at home" in this district; where the company's executives maintain their offices; or where the company files are kept. Goodyear, 131 S. Ct. at 2854.

The case Ambriz cites in support of his venue claim, Dudash v. Varnell Struck & Associates, Inc., No. 04-cv-2478-MHP, 2004 WL 2623903 (N.D. Cal. Nov. 16, 2004), is readily distinguishable. Dudash was a collective action pursuant to the Fair Labor Standards Act. Based in Georgia, Varnell supplied stock clerks to retail chains throughout the country, including four Lowe's Home Improvement Stores in this district. Varnell also supplied four to nine area service representative to the Lowe's stores in this district. The court found that "[t]he placement of fixed employees and sales routes within this district constitute continuous and systematic contacts, availing Varnell of the privileges and protections of business in this district and making a lawsuit relating to Varnell's California employment base foreseeable."[3] Id. at *3 (citing Burger King v. Rudzewicz, 471 U.S. 462, 472–76 (1985)). The Dudash court found that this district would have general personal jurisdiction over the defendant, Varnell Struck & Associates, if this district were a state. Here, by contrast, the record contains none of the information that was before the Dudash

---

[3] Despite finding that Varnell was subject to general personal jurisdiction in this district, the Dudash court transferred the action to the Central District of California pursuant to 28 U.S.C. § 1404(a), based in part on the fact that the named plaintiff resided and worked in that district.

court.

### b. Specific Personal Jurisdiction

Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 131 S. Ct. at 2851 (quoting von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)). In the Ninth Circuit, courts employ a three-part test to determine whether a defendant's contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991) (emphasis omitted).

Ambriz did not work and does not reside in this district. There is no evidence that any contacts Coca-Cola has had with Ambriz relate to this forum. Instead, Ambriz relies entirely on Coca-Cola's employment of unnamed members of the proposed class as the source of the "minimum contacts" required. Precisely stated, Ambriz's argument raises the question of whether a defendant's contacts with unnamed members of a proposed class may be considered in the minimum contacts analysis.

"The general rule is that only the residence of the named parties is relevant for determining whether venue is proper." Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1757 (3d ed.) (footnotes omitted). See Dukes v. Wal-Mart Stores, Inc., No. 01-cv-2252-MJJ, 2001 WL 1902806 (N.D. Cal. Dec. 3, 2001) ("The Court adopts here the general rule that each plaintiff in a class action must individually satisfy venue."); Levine v. Entrust Grp., Inc., No. 12-cv-03959-WHA, 2012 WL 6087399 (N.D. Cal. Dec. 6, 2012) ("[D]etermining which potential venue is appropriate should be based on the plaintiffs in the class action—not absent class members.") (citing Dukes, 2001 WL 1902806, at *9); Briggs v. United States, No. 07-cv-05760-WHA, 2009 WL 113387 (N.D. Cal. Jan. 16, 2009) ("[C]ourts generally hold that the named plaintiffs must satisfy the applicable venue

1  requirements but that *unnamed* plaintiffs need not satisfy those requirements.").[4]

2  The same rule has been applied to special venue statutes with different venue requirements, such as in Title VII suits. See, e.g., Amochaev v. Citigroup Global Markets Inc., No. 05-cv-1298-PJH, 2007 WL 484778 (N.D. Cal. Feb. 12, 2007) ("While Congress expanded a plaintiff's venue choices by enacting specific venue provisions for Title VII actions, there is no evidence in the language of the statute or the statute's legislative history that Congress intended to abrogate the requirement that each named plaintiff satisfy the venue requirements. Accordingly, each named plaintiff must demonstrate that he or she satisfies Title VII's venue provision."); Turnley v. Banc of Am. Inv. Servs., Inc., 576 F. Supp. 2d 204, 212 (D. Mass. 2008) (citing Cook v. UBS Fin. Servs., Inc., No. 05cv-8842-SHS, 2006 WL 760284, at *6 n.2 (S.D.N.Y. Mar. 21, 2006); Quarles v. Gen. Inv. & Dev. Co., 260 F.Supp.2d 1, 13 (D.D.C.2003)).

Similarly, prior to the enactment of the Class Action Fairness Act of 2005, only the named representatives of a class were considered for purposes of determining diversity of citizenship and the amount-in-controversy requirement. See Gibson v. Chrysler Corp., 261 F.3d 927, 941 (9th Cir. 2001), cert. den'd 534 U.S. 1104 (2002).

The Court concludes that a defendant's contacts with the named plaintiff in a class action, without reference to the defendant's contacts with unnamed members of the proposed class, must be sufficient for the Court to exercise specific personal jurisdiction over the defendant. Simply put, it is the named plaintiff's claim that "must arise out of or result from the defendant's forum-related activities," not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification.[5]

---

[4] See also Mull v. Alliance Mortgage Banking Corp., 219 F. Supp. 2d 895, 904 (W.D. Tenn. 2002) (same); Bywaters v. United States, 196 F.R.D. 458, 464-65 (E.D. Tex. 2000) (same); Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 73 (D.R.I. 1995) (same); Dunn v. Sullivan, 758 F. Supp. 210, 216 amended, 776 F. Supp. 882 (D. Del. 1991) ("Venue in a class action suit is proper for the entire class if it is proper for the named plaintiffs."); U. S. ex rel. Sero v. Preiser, 506 F.2d 1115, 1129 (2d Cir. 1974) (same).

[5] Plaintiff also argues that he is not required to meet federal class certification requirements in order to proceed with his Labor Code Private Attorneys General Act ("PAGA") claim. Cal. Lab. Code § 2698, *et. seq.* See Arias v. Super. Ct., 46 Cal. 4th 969 (2009). The decision in Arias has no

1    Looking only to Coca-Cola's contacts with Plaintiff Ambriz, and treating this district as a

2 separate state, the Court concludes that there is no basis for this to exercise personal jurisdiction

3 over Coca-Cola on the present record. Consequently, Plaintiff's suit was filed in an improper

4 venue, as Coca-Cola does not reside in this district for purpose of the 28 U.S.C. § 1391 venue

5 analysis.

### B.  Motion to Transer Pursuant to 28 U.S.C. § 1404(a)

7    Coca-Cola also moves to transfer this case to the Central District of California pursuant to

8 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice."

9 The court must weigh multiple factors in deciding a motion to transfer under section 1404(a),

10 including "(1) the location where the relevant agreements were negotiated and executed, (2) the

11 state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the

12 respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of

13 action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the

14 availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8)

15 the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99

16 (9th Cir. 2000). "The defendant must make a strong showing of inconvenience to warrant

17 upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805

18 F.2d 834, 843 (9th Cir. 1986).

19    Although some of these factors are neutral, only one points in favor of the Northern

20 District: Plaintiff's choice of forum. And in a case such as this one, where the plaintiff has

21 brought an action on behalf of a class and the operative facts have not occurred within the forum,

22 the plaintiff's choice of forum is entitled to less weight. Lou v. Belzberg, 834 F.2d 730, 739 (9th

23 Cir. 1987). On the other hand, many other factors — the respective parties' contacts with the

24 forum, the contacts relating to the plaintiff's cause of action in the chosen forum, the ease of access

---

bearing on the question of which contacts must be considered for personal jurisdiction purposes. Indeed, though Plaintiff may pursue a representative action via different procedural requirements under PAGA, as in a class action, he would do so on behalf of "nonparty aggrieved employees" not before the Court. The same analysis therefore applies.

10

to sources of proof, and potentially the differences in the costs of litigation in the two forums — all point towards the Central District.  The court in Dudash could have been discussing the facts of this case when it summarized as follows:

> Plaintiff does not allege or argue that he resides in this district, nor that his employment was located here, and defendants have offered evidence that his residence has been, and continues to be, in the Central District . . . .  The vast majority of liability and damages witnesses to this dispute are not located in this district.  Numerous key witnesses to plaintiff's work schedule, meal and rest breaks, job duties, and level of responsibility will be Lowe's employees along plaintiff's Southern California sales route . . . .[¶]  *In fact, this court is at a loss to identify parties, witnesses, or items of evidence pertinent to Dudash's claims which would be more conveniently accessed in this district.*

Dudash, 2004 WL 2623903 at *4–5 (emphasis added).  Accordingly, as did the Dudash court, this court concludes that "Defendant has made an unusually strong showing of inconvenience to the parties and witnesses involved in this case," id., and that transfer to the Central District is appropriate under section 1404.

## IV.     CONCLUSION

Because the Court finds that this action was filed in an improper venue, the Court hereby Orders this action transferred to the Central District of California for further proceedings pursuant to 28 U.S.C. § 1406(a).

In the alternative, the Court finds that even if venue is proper in this district, the matter must be transferred to the Central District of California for the convenience of parties and witnesses, in the interest of justice, pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

Dated:  January 27, 2014

JON S. TIGAR
United States District Judge